UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MONWELL DOUGLAS,

    Plaintiff,

    v.                                CAUSE NO. 3:20-CV-1017-JD-MGG

WILLIAM R. HYATTE, et al.,

    Defendants.

OPINION AND ORDER

Monwell Douglas, a prisoner without a lawyer, filed a lengthy complaint against thirteen separate defendants. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On April 1, 2020, Douglas was placed in segregation after he was mistakenly identified as having been involved in an assault. ECF 1 at 23. Douglas alleges that on April 10, 2020, the toilet in his cell began to overflow. *Id.* at 20. He told Officer M. Cook and Officer M. Easley. *Id.* Officer Cook tried to turn off the water, but his attempt was unsuccessful. *Id.* After talking amongst themselves briefly, Officer Cook and Officer Easley began serving chow. *Id.* Douglas and his cellmate yelled to be removed from the

cell. *Id.* Officer Cook said, "ok in a minute." *Id.* While chow was still being served, more toilets began overflowing, and more prisoners began yelling for the water to be turned off. *Id.* The inmates were ignored, and a "huge lake like pond" of sewage formed in the middle of the dayroom. *Id.* Either Officer Cook or Officer Easley – it is unclear from the complaint which one - returned to Douglas's cell to assess, made a face due to the smell, and then left without returning for days. *Id.*

Inmates yelled to have the water turned off and to be removed from their cells for nine hours, but custody staff acted as if they could not see the sewage. *Id.* At 8:30 p.m., Sgt. L. McDonald and Officer D. Martin arrived. *Id.* at 21. By this time, there was four to six inches of sewage covering the floor. *Id.* In the six and a half hours since the sewage began to flow from the toilets, Douglas had not eaten, used the bathroom, slept, showered, or been let out of his cell. *Id.* When Douglas yelled at Sgt. McDonald and Officer Martin that he needed to be removed from his cell, he was told that Captain E. Pickens had been notified and was on his way. *Id.* Douglas returned to his bunk, but he fell from the bunk and landed in the sewage. *Id.* According to Douglas's cellmate, Douglas was shaking like he was having a seizure, his mouth was bleeding, his teeth were broken, and he was making vomiting noises. *Id.* When Sgt. McDonald and Officer Martin walked by, Douglas's cellmate attempted to get their attention. *Id.* at 21-22. Sgt. McDonald yelled "what," and Douglas's cellmate told Sgt. McDonald that Douglas had fallen, was unconscious, and needed medical attention. *Id.* at 22. He responded by saying that Captain Pickens would be there shortly. *Id.* When Douglas awoke, he was dazed, had a headache, and could not stand without losing his balance. *Id.*

Douglas remained in that cell until 5:30 p.m. the next day with no food, no place to use a bathroom, no clean water to drink, and no shower. *Id.* At some point during this timeframe, Sgt. M. Porter told Douglas that Captain Pickens denied a request that he be removed from his cell. *Id.* at 15. By Saturday evening, the pipes were unclogged, and Douglas received a sack lunch and a shower. *Id.* at 22. But four hour later, the pipes began overflowing again. *Id.* This continued through Sunday. *Id.*

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

3

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference"). Giving Douglas the benefit of the inferences to which he is entitled at this stage of the proceedings, he has stated a claim against Officer Cook, Officer Easley, Sgt. McDonald, Officer Martin, Captain Pickens, and Sgt. Porter for violating his Eighth Amendment rights by subjecting him to sewage on April 10, 2020, through April 12, 2020. However, Douglas has also sued Sgt. Aldridge for "not having or allowing [him] to be removed from his cell[.]" ECF 1 at 15. Douglas has not pled any facts that suggest Sgt. Aldridge was personally involved in the decision to leave Douglas in his cell, and he therefore will not be granted leave to proceed against Sgt. Aldridge. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

    Douglas requested supplies to clean his cell following the sewage problem. He specifically asked for bleach to clean with, but the request was denied. ECF 1 at 22. He was instead provided with a "water soaked germicide." *Id.* Additionally, Sgt. Aldridge offered Douglas mop water that was being used to clean the dayroom. *Id.* at 15. Douglas sued Lt. D. McCord and Sgt. Aldridge for denying him cleaning supplies (*Id.* at 14-15), but Douglas does not allege that he was denied all cleaning supplies. He was provided with mop water, although he alleges it was dirty. And, he was provided with a germicide, although it was not the chemical of his choice. These facts do not

4

demonstrate deliberate indifference to Douglas's needs, and he will not be granted leave to proceed on his claims that he was denied adequate cleaning supplies.

Douglas sued W. Schaffer, the head janitor, because he did not unclog Douglas's toilet after being told that material had been stuffed into the pipes. *Id.* at 14-15. Instead, he became frustrated even though Douglas did not clog the toilet. These vague allegations do not demonstrate deliberate indifference. Therefore, Douglas will not be permitted to proceed against Janitor W. Schaffer.

Following these events, Douglas requested grievance forms. ECF 1 at 22. On April 18, following his request, inmates in cells 301-312 were denied recreation and showers. *Id.* Douglas asked Unit Team Manager N. Angle about this, and he told Douglas that there had been a fight between two inmates on the range, so he had the entire range restricted for the remainder of the week – two days. *Id.* Douglas noted that most of the inmates had nothing to do with that fight. *Id.* Angle acknowledged this, but said it was his right to take away recreation and showers all the same. *Id.* A two-day ban on recreation does not implicate constitutional concerns. Though a total lack of exercise would state a claim where "movement is denied and muscles are allowed to atrophy," *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), the denial of "desirable, entertaining diversions . . . [do] not raise a constitutional issue," *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988). *See also Douglas v. DeBruyn*, 936 F. Supp. 572, 578 (S.D. Ind. 1996). Likewise, a two-day ban on showers does not implicate constitutional concerns. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (weekly showers are not a constitutional violation); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316

5

(7th Cir. 1988) ("The importance of the daily shower to the average American is cultural rather than hygienic . . ..") . Therefore, these allegations do not state a claim.

Douglas also suggests that the ban on recreation and showers was instituted by Angle in retaliation for Douglas requesting grievance forms. ECF 1 at 22. To prevail on a First Amendment retaliation claim, [Douglas] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Douglas alleges no facts suggesting a link between his request for grievance forms and the decision to take showers and recreation away from several inmates following a fight on the range. Furthermore, a two-day deprivation of recreation and showers would not likely deter future First Amendment activity. Therefore, Douglas will not be granted leave to proceed on this claim.

Douglas also sued Captain Pickens, Lt. McCord, Sgt. Aldridge, Sgt. Porter, Officer Cook, Officer Easley, Officer Martin, and Sgt. McDonald for denying him recreation, showers, and/or food on a daily basis. ECF 1 at 31-19. As to these defendants, Douglas has not pled any specific factual allegations about when or how they were personally involved in denying him recreation, showers, or food. As already noted, "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 596. The doctrine of *respondeat superior*, which allows an employer to be held liable for subordinates' actions in some types of cases, has no

6

application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). Furthermore, even if these defendants were personally involved in denying him showers and recreation for two days, as already noted, such short-term denials do not amount to constitutional violations. The same is true of his allegations regarding being denied food. He alleges he was denied food daily, but he has pled facts that demonstrate only that he was deprived of a couple meals. He alleges that food was being passed out on the evening the flooding started – a Friday. ECF 1 at 20. He alleges that food was served the next evening. *Id.* at 22. And he alleges that the issue was resolved by Sunday. *Id.* Objectively, "[t]here is, of course, a *de minimus* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), *see also Hudson v. McMillian*, 503 U.S. 1, 9-10. The deprivations that Douglas describes do not implicate constitutional concerns. *See Freeman v. Berge,* 441 F.3d 543, 547 (7th Cir. 2006); *Morris v. Kingston*, 368 F. App'x 686, 688-89 (7th Cir. 2010). Therefore, he may not proceed against Captain Pickens, Lt. McCord, Sgt. Aldridge, Sgt. Porter, Officer Cook, Officer Easley, Officer Martin, or Sgt. McDonald on these allegations.

By the next day, trash had accumulated outside of Douglas's cell. ECF 1 at 23. There were ants, roaches, and other insects on the range. *Id.* Douglas submitted notices to Unit Team Manager Angle and Caseworker T. Hamrick on April 19, 2020. They responded by indicating that the issue was being addressed. *Id.* It is unclear when the problem with trash was resolved, but Douglas has pled no facts suggesting deliberate indifference.

Douglas collected declarations from inmates regarding the flooding of the range. *Id.* On April 29, 2020, he submitted these to Legal Library Clerk Kenny Bennett to copy. *Id.* On May 5, 2020, he asked Bennett where the documents went. *Id.* Bennett indicated that he returned them copied the next day, but Angle told him he was not allowed in the building. *Id.* Angle said to leave the documents with him and Hamrick, and they would make sure Douglas received them. *Id.* Douglas never received them. *Id.* Again, Douglas suggests that this amounts to retaliation, but he has not identified an adverse action that would be likely to deter future first amendment activity. Therefore, he will not be granted leave to proceed on this claim.

Douglas also sued Angle for destroying the documents. *Id.* at 13. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees, and they provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort

8

Claims Act, and no more process was due."). Even the destruction of legal materials is merely a property loss if the papers are replaceable. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987) (holding that, where no actual or probable detriment was alleged, destruction of legal papers did not constitute a deprivation of meaningful access to the courts and "the Due Process Clause of the Fourteenth Amendment does not furnish appellant with a basis for suit under § 1983 because a constitutionally adequate state tort claims act provides appellant with a suitable nonconstitutional remedy."). Furthermore, legal papers are not deemed irreplaceable merely because there is a cost associated with obtaining them. Therefore, these allegations do not state a claim.

On August 10, 2020, Douglas was notified that some of his property that was being held by Officer J. Rhodes was destroyed. ECF 1 at 24. It is unclear how this act – which occurred several months later – is related to the other allegations of the complaint. Nonetheless, it does not state a claim, for the same reasons that his allegations regarding the destruction of the declarations do not state a claim.

Douglas also sued Sgt. McDonald for denying him medical care on April 10, 2020. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

9

attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). According to the complaint, Sgt. McDonald knew that Douglas had fallen, was unconscious, and needed medical attention, but he responded only by saying that Captain Pickens would be there shortly. ECF 1 at 22. Giving Douglas the benefit of the inferences to which he is entitled at this stage of the litigation, he has stated a claim against Sgt. McDonald for denial of medical care on April 10, 2020.

On May 13, 2020, the conduct allegations against Douglas were dismissed. ECF 1 at 23. Nonetheless, he remained in segregation. *Id.* On May 20, 2020, he began screaming to a passing DHB officer that he was being held on purpose. *Id.* at 23-24. The officer asked Angle and Hamrick why Douglas was still in segregation. *Id.* at 24. They indicated that they thought he had more sanctions. *Id.* Douglas was immediately released. *Id.*

Douglas sued Angle and Hamrick for detaining Douglas in segregation after being notified that Douglas was cleared of all sanctions. Douglas alleges that this was intentional, but he has pled no facts supporting that claim. The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due

10

process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). However, placement in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage). Here, Douglas remained in segregation for an extra week. Therefore, this does not amount to a constitutional violation.

Finally, Douglas sued Warden William R. Hyatte for ignoring numerous request slips, grievances, tort claims, and notices of the alleged constitutional violations. ECF 1 at 13. As already noted, "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d 596. The doctrine of *respondeat superior*, which allows an employer to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). Similarly, he claims that Hamrick was indifferent to his pleas for help concerning injuries and unsanitary living conditions (ECF 1 at 14), but he does not provide any details regarding Hamrick's personal involved in the events and

circumstances that Douglas describes – beyond what has already been addressed above. "Only persons who cause or participate in the [Constitutional] violations are responsible" for those violations, failure to investigate or ruling against a prisoner's complaint "does not cause or contribute to the violation." *George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007) (citations omitted). Therefore, Douglas may not proceed on these claims.

For these reasons, the court:

(1) GRANTS Monwell Douglas leave to proceed against Officer M. Cook, Officer M. Easley, Sgt. L. McDonald, Officer D. Martin, Captain E. Pickens, and Sgt. M. Porter in their individual capacities for compensatory and punitive damages for subjecting him to sewage from April 10, 2020, through April 12, 2020, in violation of the Eighth Amendment;

(2) GRANTS Monwell Douglas leave to proceed against Sgt. L. McDonald in his individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical needs on April 10, 2020, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Warden William R. Hyatte, Unit Team Manager N. Angle, Caseworker T. Hamrick, Lt. D. McCord, Janitor W. Schaffer, Sgt. Aldridge, and Officer J. Rhodes;

(5) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Officer M. Cook, Officer M. Easley, Sgt. L. McDonald, Officer D. Martin, Captain E. Pickens, and Sgt. M. Porter at the

Indiana Department of Correction, with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Officer M. Cook, Officer M. Easley, Sgt. L. McDonald, Officer D. Martin, Captain E. Pickens, and Sgt. M. Porter to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 1, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT