UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MONWELL DOUGLAS,

    Plaintiff,

    v.                                CAUSE NO. 3:20-CV-1017-JD

E. PICKENS, et al.,

    Defendants.

## OPINION AND ORDER

Monwell Douglas, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding "against Officer M. Cook, Officer M. Easley, Sgt. L. McDonald, Officer D. Martin, Captain E. Pickens, and Sgt. M. Porter in their individual capacities for compensatory and punitive damages for subjecting him to sewage from April 10, 2020, through April 12, 2020, in violation of the Eighth Amendment[.]" ECF 19 at 12. Second, he is proceeding "against Sgt. L. McDonald in his individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical needs on April 10, 2020, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a motion for summary judgment. ECF 98. Douglas filed a response, and the defendants filed a reply. ECF 109, 111. Douglas also filed a motion for leave to file a sur-response, and the defendants responded. ECF 112, 113.[1] The summary judgment motion is now fully briefed and ripe for ruling.

---

[1] The court has reviewed the contents of Douglas' sur-response, and concludes it has no bearing of the disposition of this case. Therefore, his motion for leave to file a sur-response will be denied.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The defendants provide an affidavit from Captain Matthew Morson, the former Safety Hazard Manager at Miami Correctional Facility ("MCF"), and Willis Cooper, the Physical Plant Director at MCF, who attest to the following facts: At MCF, four cells are connected to the same pipe chase. ECF 98-1 at 1; ECF 98-2 at 1. For each pipe chase, there are two cells connected upstairs and two cells connected downstairs. *Id.* Typically, there are two inmates in each cell, so each pipe chase serves four cells and eight inmates. *Id.* If any of those eight inmates makes an effort to clog their toilet, the

2

resulting obstruction can cause flooding in the four cells connected to the same pipe chase. ECF 98-1 at 1; ECF 98-2 at 2. Maintenance staff fixes a clogged toilet by shutting the water off to the four cells connected to the pipe chase and removing the clog. ECF 98-1 at 2; ECF 98-2 at 2. There is rarely a need for maintenance staff to enter a cell to fix a clog or resulting flooding. ECF 98-2 at 2.

During the relevant time frame between April 10, 2020, and April 12, 2020, Douglas was housed at MCF in AHU, a restricted housing unit. ECF 98-1 at 2. During April 2020, there was a substantial increase in aggressive behavior by inmates in AHU and toilets were frequently purposefully clogged by offenders. *Id.* Entry into cells in the AHU puts the staff at risk of harm given the dangerous nature of the inmates housed there. ECF 98-2 at 2. Accordingly, inmates in AHU stay in their cells while the clog is repaired through the pipe chase. *Id.* After a clogged toilet is fixed in AHU, inmates must wait for the flooding to subside. *Id.* In the interim, they are given anti-bacterial cleaning products to clear their cells themselves. *Id.* This is because AHU is a segregation unit and these inmates are required to be on lockdown at all times, except for showering. *Id.* Only in the most exigent of circumstances will inmates be removed so a janitor can clean a cell. *Id.* In AHU, each cell has four solid walls and a door with a one-inch gap underneath it. ECF 98-1 at 2. Sewage cannot pool in an AHU cell by more than a few inches unless an inmate purposefully blocks the gap underneath the door to prevent the sewage from running out. *Id.* Because Douglas does not dispute these facts, the court accepts them as undisputed.

The defendants provide only general evidence regarding how flooding in AHU is typically handled, and do not provide any specific evidence regarding the condition of Douglas' cell or their actions to remedy those conditions between April 10, 2020, and April 12, 2020. In response to the summary judgment motion, Douglas incorporates by reference his complaint and affidavits from other inmates (ECF 109-1 at 1), which show the following facts: Around 2:00 p.m. on April 10, 2020, the toilet in Douglas' cell began overflowing. ECF 20-2 at 20. Douglas and his cellmate, Victor Adamson-Scott, contacted Officers Cook and Easley and showed them the toilet was overflowing and spilling urine and feces all over their floor. *Id.* Officers Cook and Easley spoke briefly with each other and then began serving evening chow. *Id.* Douglas and his cellmate began yelling in a panic to be let out of their cell so they could eat and shower, but the defendants continued serving chow. *Id.* Other toilets on the range then began overflowing, making a huge lake-like pond in the middle of the dayroom. *Id.* Once Officers Cook and Easley finished serving chow, they came back to Douglas' cell to observe the situation, made a face at the smell of the sewage, and then left the building. *Id.* Douglas and other inmates continued to yell for the water to be cut off and to be removed from their cells, but they were ignored. *Id.* At 8:30 p.m., Sgt. McDonald and Officer Martin came to Douglas' cell. *Id.* at 21. By that time, the sewage in his cell was approximately four to six inches high. *Id.* Douglas had been standing in sewage since 2:00 p.m. and had been unable to sleep, use the bathroom, take a shower, or leave his cell. *Id.* Sgt. McDonald and Officer Martin kept Douglas in his cell and informed him that Capt. Pickens had been notified and was on his way to the unit. *Id.*

4

Around 2:40 a.m., Douglas attempted to move some of the waste out of his cell, but slipped in the water and hit his head and passed out. ECF 20-2 at 21, 33, 35. Douglas' cellmate yelled for three minutes at Sgt. McDonald and Officer Martin, asserting that Douglas required medical attention, but Officer Martin only responded that Capt. Pickens would be there soon. *Id.* It is not clear when Capt. Pickens arrived at Douglas' cell, but Douglas' cellmate attests that Capt. Pickens was "notified" of the issues and ignored his requests for help. *Id.* at 33. Douglas eventually awoke with a major headache and could not stand without losing his balance. ECF 20-2 at 22. Douglas and his cellmate stayed in their cell until 5:30 p.m. the next day, April 12, 2020, without any food, clean water, place to use the bathroom, or shower. *Id.* When the next shift began, staff began removing clogged items from pipes and gave Douglas sack lunches and a shower. *Id.* Around 9:30 p.m., the pipes began overflowing again, which continued until late that evening. *Id.* Douglas requested bleach and a mop to begin cleaning his cell, but his request was denied. *Id.* Because the defendants do not dispute these facts, the court accepts them as undisputed.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate

5

comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference").

In their summary judgment motion, the defendants raise three arguments. First, the defendants argue the condition of Douglas' cell was not objectively serious because the clogging was not created by them and was "temporary in nature." ECF 99 at 3-8. However, the fact the defendants did not create the flooding is not relevant to whether or not the condition was serious. Moreover, the defendants provide no evidence regarding the condition of Douglas' cell or the duration of those conditions, while Douglas provides evidence his cell was flooded with several inches of sewage for at least 48 hours, leaving him unable to eat, sleep, use the bathroom, or shower. Based on this evidence, a reasonable jury could conclude the condition of Douglas' cell was sufficiently

6

serious that it denied him the minimal civilized measure of life's necessities. *See Farmer*, 511 U.S. at 834; *Knight*, 590 F.3d at 463.

Second, the defendants argue summary judgment is warranted in their favor because there is no evidence they consciously disregarded a substantial risk of serious harm to Douglas. ECF 99 at 8-11. Each defendant will be addressed in turn.

Capt. Pickens argues there is no evidence he was personally involved in any violation of Douglas' constitutional rights because Douglas conceded in his interrogatory responses that he was "knocked out" while Capt. Pickens was at his cell. ECF 99 at 8. However, Douglas offers an affidavit from his cellmate, who attests that Capt. Pickens was notified of the flooding and ignored their requests for help. ECF 20-2 at 33. A reasonable jury could credit Douglas' cellmate's testimony and conclude that Capt. Pickens was personally involved in a violation of Douglas' constitutional rights.

Officer Cook argues there is no evidence he knew of and disregarded a substantial risk of harm to Douglas because Douglas only spoke to him through a locked door, so Douglas cannot show for certain that he actually spoke with Officer Cook or that Officer Cook actually heard and understood his requests for help. ECF 99 at 9. But Officer Cook provides no evidence disputing Douglas' testimony that he spoke with Officer Cook through the locked door. A reasonable jury could therefore credit Douglas' testimony and conclude he spoke with and requested help from Officer Cook through the locked door but was denied. Thus, a reasonable jury could conclude Officer Cook was deliberately indifferent for ignoring Douglas' requests for help.

Officer Easley argues her conduct did not rise to the level of a constitutional violation because, even accepting Douglas' claims as true, deliberate indifference requires something more than merely ignoring his requests for help. ECF 99 at 9. However, case law shows that a defendant may be found deliberately indifferent for ignoring requests for help. *See Board*, 394 F.3d at 478 (holding that conduct is deliberately indifferent when the defendant knew "the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so"); *Reed*, 178 F.3d at 855 (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference"). Thus, a reasonable jury could conclude Officer Easley violated Douglas' rights by ignoring his requests for help.

Officer Martin argues there is no evidence he violated Douglas' constitutional rights because Douglas did not actually witness any of his alleged actions. ECF 99 at 10. But Douglas provides evidence he asked Officer Martin for help around 8:30 p.m. the day his cell first flooded, and his cellmate asked Officer Martin for help later that night after Douglas got knocked out, and Officer Martin refused to help on both occasions. ECF 20-2 at 21, 33-34. Based on this evidence, a reasonable jury could conclude Officer Martin was deliberately indifferent to Douglas' health and safety.

Sgt. Porter argues her alleged conduct does not rise to the level of deliberate indifference. ECF 99 at 10. In his interrogatory responses, Douglas asserted that Sgt. Porter denied him the "necessary materials" and would not allow him to be moved to another cell. ECF 55 at 3. But it is unclear from the record how Sgt. Porter was involved

8

in Douglas' claim. Specifically, there is no mention in Douglas' response, complaint, or affidavits regarding what actions Sgt. Porter took or failed to take between April 10 and April 12. Based on the evidence in the record, no reasonable jury could conclude Sgt. Porter was deliberately indifferent to Douglas' health and safety. Summary judgment is warranted in her favor.

Sgt. McDonald argues his alleged conduct of denying necessary cleaning supplies and access to shower and recreation did not rise to the level of deliberate indifference. ECF 99 at 10-11. But similar to Officer Martin, Douglas provides evidence he asked Sgt. McDonald for help around 8:30 p.m. the day his cell first flooded, and his cellmate asked Sgt. McDonald for help later that night after Douglas got knocked out, and Sgt. McDonald refused to help on both occasions. Based on this evidence, a reasonable jury could conclude Sgt. McDonald's conduct was deliberately indifferent.

Regarding Douglas' claim that Sgt. McDonald was deliberately indifferent to a serious medical need, Sgt. McDonald likewise argues there is no evidence he was deliberately indifferent. But Douglas provides evidence his cellmate informed Sgt. McDonald that Douglas had fallen in the cell and required medical attention, but Sgt. McDonald refused to provide any assistance. Based on this evidence, a reasonable jury could conclude that Sgt. McDonald was deliberately indifferent to a serious medical need.

Lastly, all defendants argue they are entitled to qualified immunity because their conduct was not clearly unconstitutional. ECF 99 at 11-12. Douglas responds that the defendants' conduct of forcing him to live in an environment saturated with raw

9

sewage and denying him cleaning materials is clearly unconstitutional. ECF 109 at 5-6. Here, construing the facts in the light most favorable to Douglas, the defendants' alleged conduct of leaving him in a cell filled with several inches of sewage for over two days violated his constitutional rights based on clearly established precedent. *See Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (holding that no reasonable correctional officer could have concluded it was constitutionally permissible to house an inmate in a cell teeming with human waste for six days); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (holding that it was "clearly established well before 2001" that keeping an inmate in a cell covered with water, blood, and feces for six days denied him the 'minimal civilized measure of life's necessities'"). Thus, the defendants cannot avoid trial on the grounds of qualified immunity.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment with regard to Douglas' claim against Sgt. Porter, but DENIES it in all other respects;

(2) DISMISSES Sgt. Porter from this action;

(3) DENIES Douglas' motion for leave to file a sur-response (ECF 112); AND

(4) REMINDS the parties this case is now proceeding only on Douglas' remaining claims: (a) against Officer M. Cook, Officer M. Easley, Sgt. L. McDonald, Officer D. Martin, and Captain E. Pickens in their individual capacities for compensatory and punitive damages for subjecting him to sewage from April 10, 2020, through April 12, 2020, in violation of the Eighth Amendment; and (b) against Sgt. L. McDonald in his individual capacity for

compensatory and punitive damages for deliberate indifference to his serious medical needs on April 10, 2020, in violation of the Eighth Amendment.

SO ORDERED on May 1, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT